**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02481-NYW

JACK M. DELANEY,

    Plaintiff,

v.

LOWE'S HOME CENTERS, LLC,[1]

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant Lowe's Home Centers, LLC's ("Defendant" or "Lowe's") Motion for Summary Judgment and Supporting Brief (the "Motion for Summary Judgment" or "Motion"), filed August 17, 2020. [#25]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated October 23, 2019, [#13], and concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon review of the Motion and associated briefing, the record before the court, and the applicable case law, the court **GRANTS** the Motion for Summary Judgment for the reasons stated herein.

**UNDISPUTED MATERIAL FACTS**

    The court draws the following undisputed material facts from the record before the court. In some instances, a party has disputed the proffered material fact, but an examination of the record

---

[1] By this Memorandum Opinion and Order, the Clerk of the Court shall amend the case caption to reflect the accurate spelling of Defendant's corporate identity.

finds that such dispute is not properly supported by evidence in the record.  Where that is the case, the court has noted the dispute and its analysis.[2]

1.      In or about April 2012, Lowe's hired Plaintiff Jack M. Delaney ("Plaintiff" or "Mr. Delaney"), who was 75 years-of-age, to work at its home improvement store in Parker, Colorado. [#25-1 at 7:11-13, 18:19-25, 22:23-23:2].[3]

2.      At some point,[4] Mr. Delaney became a Sales Specialist in the Millwork Department.  *See* [*id.* at 26:9-15; #25-3; #31-1 at 35-37].

3.      "The primary function of the Sales Specialist Millwork is to serve as the store expert on millwork [i.e., doors and windows] by providing detailed product information to both customers and other Lowe's employees," [#25-2 at 1], which includes generating sales on millwork products and installations, among others, *see* [#25-1 at 21:2-22:17, #25-2 at 1; #25-3 at 1-2].

---

[2] Mr. Delaney appears to dispute numerous material facts.  *See generally* [#31 at 2-17].  But several of Mr. Delaney's disputes are immaterial to the court's consideration of the instant Motion or are not supported by specific facts or admissible evidence to demonstrate a disputed material fact and he cannot simply rely on denials.  Fed. R. Civ. P. 56(e) ("If a party fails … to properly address another party's assertion of fact as required by Rule 56(c), the court may: … consider the fact undisputed for the purposes of the motion.").  Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment, *see Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990); nor may the nonmovant rely on "mere reargument of his case or a denial of an opponent's allegation," *see* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).  Further, Mr. Delaney cannot create genuine disputes of material fact based on his own contradictory sworn statements.  *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 956 n.3 (10th Cir. 2012) (noting that an affidavit on summary judgment could not create a genuine issue of material fact when, without explanation, it contradicts prior testimony).

[3] When citing to a transcript, the court cites to the document number generated by the court's Electronic Filing System, but the page and line numbers from the original transcript for the sake of consistency.

[4] There appears some ambiguity as to when Mr. Delaney assumed the role of Sales Specialist in the Millwork Department, *compare* [#25 at p. 2, ¶ 2] *with* [#31 at 2; #37 at 1], but this ambiguity is immaterial to the court's consideration of the instant Motion.

4. The Sales Specialist Millwork ("Sales Specialist") position also included numerous physical requirements that were essential to the position, such as the ability to:

    a. bend, stretch, twist, or reach with extremities,

    b. lift, push, pull, or carry objects,

    c. exert oneself physically for an extended time,

    d. see details (e.g., numbers, symbols, codes, etc.) clearly,

    e. properly lift heavy (i.e., 40 to 100 pounds) objects or equipment,

    f. coordinate one's eyes with one's hands,

    g. complete tasks in extreme cold, heat, etc.,

    h. climb, work, and carry items up and down ladders,

    i. make quick, skillful, and accurate hand movements, and

    j. perform tasks while wearing a safety harness.

[#25-2 at 2-3; #25-3 at 2-3]; *see also* [#25-1 at 35:23-36:14, 36:17-37:22, 37:24-45:13].

5. Mr. Delaney performed the essential functions of the Sales Specialist position without difficulty, *see* [#25-1 at 35:23-36:3, 38:12-13, 38:16-23, 39:22-40:2, 41:3-14, 41:18-24, 42:2-11; #31-1 at 1-3, 5], until he injured his right knee while assisting a co-worker with retrieving a heavy sliding door on or about January 4, 2017, [*id.* at 61:10-63:6].

6. Mr. Delaney returned to work a few days after the injury and worked while on crutches until he took leave to have surgery to repair his right knee, which eventually resulted in a total right knee replacement, on or about March 14, 2017. *See* [*id.* at 65:14-67:24].

7. Mr. Delaney's leave lasted until roughly November 13, 2017, *see* [*id.* at 69:19-24], after which he made several requests for accommodations.

8.      First, on or about January 15, 2018, Mr. Delaney submitted an Accommodation Request Assessment Form completed by Oswaldo Grenardo, M.D. ("Dr. Grenardo"), indicating (1) that Mr. Delaney suffered from congestive heart failure, profound hearing loss, glaucoma, total right knee replacement, and spinal fusion, which negatively affected Mr. Delaney's ability to bend, breathe, lift more than 20 pounds, reach, see, walk long distances, hear in noisy environments, and sit for long periods; (2) that Mr. Delaney needed accommodations of a captioned phone,[5] limited, lifting, limited walking, and limited use of power equipment; and (3) that Mr. Delaney would need approximately one absence per month. *See* [#25-7 at 1-5, 8-11; #25-8].

9.      Pursuant to Lowe's accommodations procedure, *see generally* [#25-4; #25-5], Lowe's Area Human Resources Manager Lisa Quintana-Guillen approved Mr. Delaney's request for one absence every 30 days but inadvertently disregarded Mr. Delaney's request for a captioned phone, *see* [#25-6 at ¶¶ 1, 5-7].

10.     On or about January 28, 2018, Mr. Delaney sent his Assistant Store Manager David Rangel ("Mr. Rangel") a request for a captioned phone; however, Mr. Rangel failed to follow up on Mr. Delaney's request for a captioned phone for several months. *See, e.g.*, [#25-1 at 107:25-108:14, 108:22-109:20].

11.     On or about May 16, 2018, Mr. Delaney submitted another request for a captioned phone to Lowe's Accommodations Department, which was assigned to an Accommodations Analyst, Sabrina Borum ("Ms. Borum") who did not have authority to hire or terminate employees, and who began working with the Human Resources Manager at Mr. Delaney's store. [#25-9 at ¶¶ 1, 4-5].

---

[5] According to Lowe's and Mr. Delaney, a captioned phone allows a user to read text transcripts of the speaker's words while on the phone. *See* [#25 at 6 n.2; #31-1 at 4].

12. On or about May 29, 2018, Mr. Delaney submitted a Lowe's Accommodation Assessment Request Form signed by Kay Stolci, PAC that was nearly identical to the form signed by Dr. Grenardo but which stressed the need for a captioned phone and requested approximately five absences per month. *See* [#25-11]; *cf.* [#25-7].

13. On or about June 12, 2018, although Human Resources Manager Teresa Smith ("Ms. Smith") approved the increased absences, [#25-12; #25-13], Ms. Borum raised concerns to Ms. Smith about the apparent permanent nature of Mr. Delaney's other work restrictions, which led to the conclusion that no reasonable accommodations would allow Mr. Delaney to perform the essential functions of a Sales Specialist in the Millwork department, *see* [#25-9 at ¶ 7].

14. At some point,[6] Ms. Borum discussed with Mr. Delaney the possibility of receiving a captioned phone and whether other work assignments were available to accommodate his restrictions. *See* [*id.* at ¶ 8; #25-10 at 3].

15. Between June 13 and June 26, 2018, Ms. Smith directed Mr. Delaney not to return to the Millwork department, though he still received his normal salary, while she searched for another position that accommodated all of Mr. Delaney's restrictions. *See* [#25-1 at 149:1-152:6, 157:24-158:9; #25-14 at 29:7-22, 31:13-33:10, 77:5-9].

16. On or about June 25, 2018, Mss. Borum and Smith discussed whether Lowe's could accommodate Mr. Delaney's apparent permanent restrictions, and given Ms. Smith's representation that no positions existed, Ms. Borum determined that a continuous leave of absence was the only available accommodation. *See* [#25-9 at ¶ 9; #25-10 at 3].

---

[6] It is unclear from the record when this conversation between Mr. Delaney and Ms. Borum precisely occurred, but all agree it occurred sometime prior to June 26, 2018.

5

17.     On or about June 26, 2018, Mr. Delaney met with Mss. Borum and Smith and learned that Lowe's did not have any positions that would accommodate his restrictions. [#25-1 at 164:3-4, 170:9-12, 172:6-10; #25-9 at ¶ 10].

18.     Although the Parties dispute whether Ms. Borum terminated Mr. Delaney or informed him that Lowe's would place him on continuous leave, *compare* [#25-1 at 62:21-164:20, 165:9-17, 169:12-172:10; #25-15; #25-16] *with* [#25-9 at ¶¶ 11, 15; #25-14 at 47:10-17], it is undisputed that at some point during the conversion Mr. Delaney mentioned his treatment for his work-related right knee injury, which prompted Mss. Borum and Smith to reevaluate whether any Lowe's positions existed to accommodate Mr. Delaney's restrictions, thereby allowing Mr. Delaney to continue working in the interim, *see* [#25-1 at 166:10-23; #25-9 at ¶¶ 12-14].

19.     In reevaluating Mr. Delaney's restrictions, Ms. Borum determined that Mr. Delaney's restrictions due to his right knee injury were only temporary, and so Mss. Borum and Smith determined Lowe's could temporarily reassign Mr. Delaney to a different position at the same salary. *See* [#25-9 at ¶¶ 16-18; #25-14 at 53:16-21; 75:24-77:14; #25-15 at 4].

20.     On or about June 29, 2018, Mr. Delaney met with Ms. Smith and two store managers and Ms. Smith informed Mr. Delaney that Lowe's was not terminating his employment and was offering Mr. Delaney a temporary assignment to a "Front End Customer Service Associate position" with several accommodations suitable to Mr. Delaney's needs and the same salary.[7] *See* [#25-1 at 174:17-175:15, 176:9-22, 182:5-13; #25-14 at 53:15-24, 55:13-18, 75:21-76:3; #25-19 at 18:17-19:2; #25-20].

---

[7] Although Mr. Delaney attests that the Front End Customer Service Associate position came with a decrease in pay, *see* [#25-1 at 182:11-13], he offers no evidence to corroborate these assertions. *See Nichols*, 921 F.2d at 1113 (explaining that the nonmovant cannot rely on conjecture or speculation to survive summary judgment).

6

21.     Mr. Delaney did not accept the accommodation and, although he did not resign from Lowe's, he worked his last day for Lowe's on June 29, 2018. *See* [#25-1 at 184:21-185:1, #25-14 at 53:25-55:1; #25-18; #25-19 at 18:15-19:2; #25-20].

22.     As of June 29, 2018, Mr. Delaney went on continuous leave under the Americans with Disabilities Act ("ADA") on the advice of his physician and received short-term disability at 60-percent of his salary until about September 2018. *See* [#25-1 at 190:12-192:17, #25-9 at ¶ 21; #25-21; #25-22].

23.     At some point, Ms. Smith put in a request for a captioned phone, but the request was never completed because Mr. Delaney did not return to Lowe's. *See* [#54:1-55:1].

24.     On September 8, 2018, Mr. Delaney filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging age and disability discrimination. *See* [#25-1 at 212:11-24; #25-22].

On August 30, 2019, Mr. Delaney initiated this civil action by filing his pro se Complaint, asserting claims against Lowe's for (1) disparate treatment, wrongful discharge, and retaliation in violation of the Age Discrimination in Employment Act ("ADEA") ("Claim 1") and (2) disparate treatment, failure to accommodate, and retaliation in violation of the ADA ("Claim 2"). *See* [#1].[8] Lowe's has now moved for summary judgment on Claims 1 and 2, and the Motion is ripe for disposition.

## LEGAL STANDARD

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[8] Mr. Delaney's Complaint also contained a claim under Colo. Rev. Stat. § 8-2-129, which this court dismissed because the statute did not create a private right of action. *See* [#21].

7

Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy his burden at summary judgment the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment). In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial, only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available

to the jury." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

In applying these legal principles, this court is mindful that Mr. Delaney proceeds pro se and is entitled to a liberal construction of his papers. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as his advocate, *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019), and applies the same substantive law and procedural rules to Mr. Delaney as to a represented party, *see Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## ANALYSIS

### I.     Claim 1 – Violations of the ADEA

The ADEA prohibits employers from discriminating against any individual over forty "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1), 631(a). In the absence of direct evidence of discrimination, a plaintiff may prove a disparate-treatment, wrongful termination, or retaliation claim using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 968-69 (10th Cir. 2017) (disparate treatment and wrongful termination); *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201 (10th Cir. 2008) (retaliation). Under this framework, Mr. Delaney bears the initial burden of proving a prima facie case of disparate treatment and retaliation; the burden then shifts to Lowe's to demonstrate a legitimate, nondiscriminatory reason for its conduct; and then the burden shifts back to Mr. Delaney to prove Lowe's reasons were false. *See Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 947 (10th Cir. 2011).

A liberal interpretation of Mr. Delaney's Complaint suggests his ADEA claim (Claim 1) arises under theories of disparate treatment, wrongful termination, and retaliation claim. *See generally* [#1]. Lowe's moves for summary judgment on Claim 1 because Mr. Delaney provides no evidence of age-based discrimination or retaliation for complaints of age discrimination. *See* [#25 at 20]. I respectfully agree with Lowe's and conclude Mr. Delaney fails to carry his initial burden of proving a prima facie case of disparate treatment, wrongful termination, or retaliation.[9]

For purposes of his disparate treatment and wrongful termination claims, Mr. Delaney must prove:

1. he is a member of a protected class (i.e., over 40 years-of-age),

2. he suffered an adverse employment action (i.e., demotion or termination),

3. he was qualified for his position as a Sales Specialist, and

4. he was treated less favorably than or replaced by younger employees.

*See Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (disparate treatment); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) (wrongful termination). The lynchpin for any ADEA discrimination claim is "that age was the 'but-for' cause of the employer's adverse decision." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (ellipsis and internal quotation marks omitted). As for his retaliation claim, Mr. Delaney must prove that he engaged in protected opposition to discrimination and suffered a materially adverse employment action because of that protected activity. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012).

---

[9] Although Mr. Delaney did not respond to Lowe's arguments regarding Claim 1, Lowe's must still demonstrate its entitlement to summary judgment. *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

It is undisputed that Mr. Delaney is a member of a protected class.  *See* Undisputed Material Facts *supra* ¶ 1.  For purposes of the instant Motion, the court will assume without deciding that Mr. Delaney was qualified for his position as a Sales Specialist (though this is not certain for reasons discussed below) and that his offered reassignment constituted an adverse employment action.  Even still, there remains no evidence that Lowe's treated Mr. Delaney differently than younger employees or that Mr. Delaney complained of age discrimination—critical elements of his ADEA claim.  *See Daniels*, 701 F.3d at 638; *Jones*, 617 F.3d at 1279; *Adamson*, 514 F.3d at 1146.  Most notably, there is no evidence to raise a reasonable inference that Lowe's demoted, terminated, and/or retaliated against Mr. Delaney because of his age or his complaints about age discrimination, and any speculation to that effect is insufficient to survive summary judgment.  *E.g.*, [#25-1 at 230:17-19 (testifying that whoever decided to reassign Mr. Delaney "may have been doing it because of my age"); 231:13-17 (testifying that Mr. Delaney did not have any evidence of ADEA retaliation but may discover some later)].

Because Mr. Delaney fails to establish prima facie cases of disparate treatment, wrongful termination, or retaliation under the ADEA, he fails to satisfy his initial burden under the *McDonnell Douglas* framework.  Lowe's is therefore entitled to summary judgment on Claim 1.

## II.   Claim 2 – Violations of the ADA

By enacting the ADA, Congress sought to ensure disabled individuals received full and equal opportunities to participate in society by prohibiting discrimination based on an individual's disability.  *See* 42 U.S.C. §§ 12101(a)-(b).  The ADA prohibits discrimination in three realms of public life: employment (Title I); public services, programs, or activities (Title II); and places of public accommodation (Title III).  *See Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).  To remedy alleged discrimination, the ADA allows private citizens to sue for damages for alleged

statutory violations. *See Guttman v. Khalsa*, 669 F.3d 1101, 1109 (10th Cir. 2012) (citing 42 U.S.C. § 12133).

Because Mr. Delaney asserts his ADA claim (Claim 2) against his former employer, Title I of the ADA governs Claim 2. Title I prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. To prove an employment discrimination claim, Mr. Delaney must establish:

1. he is disabled;
2. he is qualified to perform his essential job functions with or without accommodation; and
3. he was terminated (or demoted) because of his disability.

*Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 544 (10th Cir. 2014). Mr. Delaney may also establish a Title I discrimination claim by proving that Lowe's was aware of Mr. Delaney's need for a reasonable accommodation yet failed to provide one to him. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1048 (10th Cir. 2011). Additionally, Title I makes it unlawful for an employer to retaliate against an employee for engaging in protected opposition to discrimination. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). Like the ADEA, a plaintiff may rely on the *McDonnell Douglas* burden-shifting framework when, as here, he fails to proffer direct evidence of discrimination. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019).

Lowe's moves for summary judgment on Claim 2 for two reasons. First, Mr. Delaney cannot establish prima facie cases of disparate treatment or retaliation. *See* [#25 at 12-15, 19-20;

[#37 at 7-8]. Second, Mr. Delaney cannot demonstrate a genuine dispute of material fact that Lowe's nondiscriminatory reasons for its conduct were false. *See* [#25 at 15-19; #37 at 9-10]. Mr. Delaney counters that he performed all the essential functions of the Sales Specialist position satisfactorily and without accommodation, and disputes Lowe's characterization of the essential functions of a Sales Specialist. *See* [#31 at 18-19].[10] He further contends that Lowe's did not follow applicable ADA guidelines and regulations prior to arbitrarily removing him from the Sales Specialist position. *See* [*id.* at 19]. For the following reasons, I respectfully conclude that Mr. Delaney fails to satisfy his initial burden of establishing prima facie cases of disparate treatment, failure to accommodate, or retaliation, thereby entitling Lowe's to summary judgment on Claim 2.[11]

### A. Prima Facie Case

#### 1. Disparate Treatment

"The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013) (internal quotation marks omitted). Mr. Delaney's burden in this regard is not onerous; he needs to put forth only enough to raise an inference of discrimination, not dispel Lowe's non-discriminatory reasons. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). As explained, Mr. Delaney may demonstrate a prima facie case of disability discrimination under Title I by

---

[10] Mr. Delaney filed two Responses to the Motion for Summary Judgment. *See* [#30; #31]. The first Response was filed before this court had granted Mr. Delaney an extension of time to file his Response and appears incomplete. *See* [#30]. Mr. Delaney then filed a complete version of his Response on September 28, 2020, which the court considers for purposes of the instant Motion. *See* [#31].

[11] For this reason, I do not consider Lowe's pretext arguments.

establishing that he is disabled, is qualified to perform the essential functions of the Sales Specialist position with or without accommodation, and he suffered discrimination because of his disability. *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014).

Lowe's challenges whether Mr. Delaney can establish that he was qualified to perform the essential functions of the Sales Specialist position with or without accommodation. *See* [#25 at 13-15; #37 at 8]. Specifically, Lowe's argues that Mr. Delaney's physical restrictions, as articulated by two medical providers in two Accommodation Request Assessment Forms, prohibited him from performing the essential physical functions of the Sales Specialist position. *See* [#25 at 14-15; #37 at 8]. According to Lowe's, no reasonable accommodation would allow Mr. Delaney to perform the Sales Specialist position, and the ADA does not require employers to modify essential functions of a position to accommodation employees. *See* [#25 at 14-15; #37 at 8].

Mr. Delaney largely disputes Lowe's characterizations of the essential functions of the Sales Specialist position. *See* [#31 at 3, 7-9, 18-19]. Moreover, Mr. Delaney argues that he did perform all essential functions of the Sales Specialist position without accommodation. *See* [*id.* at 1-2, 18-19]. For the following reasons, I conclude that Mr. Delaney fails to establish that he was qualified for the Sales Specialist position with or without accommodation.

Because Lowe's does not challenge the remaining elements of Mr. Delaney's disparate treatment claim, the court will assume without deciding that Mr. Delaney is disabled and suffered an adverse employment decision (though this is unclear). The undisputed material facts reveal that the essential functions of the Sales Specialist position included being an expert on Lowe's millwork products, generating sales of millwork products and installation services, and possessing certain physical attributes that allowed a Sales Specialist to perform his or her job. *See* Undisputed

14

Material Facts *supra* ¶¶ 3-4.  Mr. Delaney tries to refute Lowe's characterizations of the Sales Specialist's essential functions, but he cannot do so based on his own uncorroborated testimony, especially given the unrefuted evidence to the contrary.  *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004) ("We are reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience.").  And the court may not "second guess the employer or [] require him to lower company standards[;] [p]rovided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it."  *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009).

Further, Mr. Delaney twice submitted Accommodation Request Assessment Forms signed by two medical providers that indicated that he had several physical restrictions, such as restrictions on lifting, walking, sitting, seeing, and hearing.  *See* Undisputed Material Facts *supra* ¶¶ 8, 12.[12]  Upon receipt of the second Accommodation Request Assessment Form, Ms. Borum began raising concerns to Ms. Smith as to whether Mr. Delaney could continue to perform the essential functions of the Sales Specialist position, with or without accommodation.  *See id.* ¶¶ 13-17.  Although Mr. Delaney appeared to perform the Sales Specialist position from November 13, 2017 to about June 13, 2018 without issue, an employee "cannot use [his] employer's tolerance of h[is] impairment-based, ostensibly temporary nonperformance of essential duties as evidence that those duties are nonessential."  *Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kans.*, 691 F.3d 1211, 1217 (10th Cir. 2012).  Moreover, the record reveals that Mr. Delaney went on continuous ADA leave on or about June 29, 2018 on the advice of his physician and received short-term

---

[12] Mr. Delaney appears to dispute the accuracy of the Accommodation Request Assessment Forms, but he offers no admissible evidence to refute the statements contained in each form and the record demonstrates that he relied upon such forms as the basis of his requests for accommodation.

disability until about September 2018. *See* Undisputed Material Facts *supra* ¶¶ 21-22. While a brief leave of absence may be appropriate, the employee must still demonstrate that he can perform the essential functions of the position in the "near future." *See Robert*, 691 F.3d at 1218.

In the absence of any evidence to the contrary, the court must defer to Lowe's designation of essential functions and its conclusion that Mr. Delaney's documented physical restrictions precluded him from performing those essential functions. *See id.* at 1216-17 (deferring to the employer's identification of essential functions, even where those functions were not specifically outlined in employment documents). Accordingly, Mr. Delaney fails to establish a prima facie case of disparate treatment, thereby entitling Lowe's to summary judgment.

### 2. Failure to Accommodate

As this court interprets the Complaint, Mr. Delaney appears to assert a failure to accommodate claim within Claim 2. *See generally* [#1]. Under Title I, it is unlawful for an employer to discriminate against an employee by failing to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee." *C.R. England, Inc.*, 644 F.3d at 1048 (brackets and ellipsis omitted) (quoting 42 U.S.C. § 12112(b)(5)(A)). "That is, failure-to-accommodate claims concern an omission rather than an action; such claims allege that the employer discriminated against the employee by not satisfying an affirmative, ADA-created duty to provide reasonable accommodations" once the employer had notice of those accommodations. *Exby-Stolley v. Bd. of Cty. Commissioners*, --- F.3d ----, ----, 2020 WL 6304349, at *7 (10th Cir. 2020).

Lowe's does not appear to challenge separately whether Mr. Delaney demonstrates a prima facie failure to accommodate claim, but rather attacks this claim in the context of Mr. Delaney's

disparate treatment claim. *See* [#25 at 13-18]. For the following reasons, the court respectfully concludes that Mr. Delaney fails to establish a prima facie case of a failure to accommodate claim.

Mr. Delaney appears to take issue with Lowe's alleged failure to discuss with him what reasonable accommodations he needed. [#31 at 19]. But "before an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *C.R. England, Inc.*, 644 F.3d at 1049. Once aware of the request for accommodations, both the employer and employee "have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999). Although Mr. Delaney argues that Lowe's failed to engage in this interactive process, *e.g.*, [#31 at 19], the record belies this contention and evinces several instances of interactive dialogue with Mr. Delaney even though he may have disagreed with the proposed accommodations, *e.g.*, Undisputed Material Facts *supra* ¶¶ 14-15, 17-20. *Cf. Iverson v. City of Shawnee*, 332 F. App'x 501, 503-04 (10th Cir. 2009) ("[A] claimant alleging that his employer failed adequately to partake of the interactive process required by the ADA will lose on summary judgment if he fails to show 'that a reasonable accommodation was possible,' and that the interactive process would have led to an accommodation.").

Moreover, it is unclear what reasonable accommodations Mr. Delaney requested that Lowe's did not provide. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (explaining that an element of a failure to accommodate claim is that the plaintiff requested a plausibly reasonable accommodation). First, Mr. Delaney submitted two requests for

17

accommodations based on physical restrictions, but the record reveals that Lowe's approved both of Mr. Delaney's requests for monthly absences, *see* Undisputed Material Facts *supra* ¶¶ 9, 13, and Mr. Delaney fails to demonstrate how Lowe's further failed to accommodate his additional physical restrictions. As mentioned, Lowe's is entitled to prescribe the essential functions of the Sales Specialist position, but the ADA does not require Lowe's to eliminate essential functions of that job as a reasonable accommodation to Mr. Delaney. *Mathews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir. 2001) ("The idea of accommodation is to enable an employee to perform the essential functions of his job; an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job."). And it is undisputed that Lowe's determined Mr. Delaney could not perform the essential functions of the Sales Specialist position. *See* Undisputed Material Facts *supra* ¶¶ 13, 16-18.

Second, "[i]f the employee is unable to return to her previous job, reassignment to a vacant position can be a reasonable accommodation and is particularly amenable to consideration during a genuine interactive process between the employee and employer." *Aubrey v. Koppes*, 975 F.3d 995, 1012 (10th Cir. 2020). It is undisputed that Lowe's offered Mr. Delaney a temporary reassignment upon reevaluating whether his physical restrictions were merely temporary. *See* Undisputed Material Facts *supra* ¶¶ 19-20. Despite Mr. Delaney's speculation, the evidence suggests the reassignment was not a demotion and did not include a decrease in pay. *See id.* ¶ 20. And it is undisputed that Mr. Delaney did not accept the temporary reassignment. *See id.* ¶ 21.

Finally, although Mr. Delaney made several requests for the captioned phone that appeared to go unheeded for several months, Mr. Delaney does not put forth any evidence that the captioned phone was required to perform the essential functions of the Sales Specialist position. *See, e.g.*, [#25-1 at 116:17-21 (explaining that the absence of a captioned phone was not a big deal)]. Absent

a relationship between the requested accommodation and disability, Mr. Delaney cannot establish a prima face case that Lowe's failed to accommodate his disability. *See Massari v. Potter*, No. 04-CV-02306-EWN-MJW, 2006 WL 318658, at *14 (D. Colo. Feb. 9, 2006) (observing that a causal relationship needed to exist between the disability and the request for accommodation).

Based on the foregoing, the court concludes that Mr. Delaney fails to demonstrate a prima facie case that Lowe's failed to provide reasonable accommodations. Thus, Lowe's is entitled to summary judgment on Mr. Delaney's failure to accommodate claim.

### 3. Retaliation

To establish a prima facie case of ADA retaliation, Mr. Delaney must prove:

1. he engaged in opposition to discrimination or sought an accommodation,
2. he suffered a materially adverse employment action, and
3. he suffered that adverse action because of his protected activity.

*Lincoln*, 900 F.3d at 1209. To prove the third element of the prima facie case, Mr. Delaney "must present evidence of circumstances that justify an inference of retaliatory motive." *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014).

As with his ADEA retaliation claim, Lowe's argues that Mr. Delaney fails to put forth any evidence suggesting Lowe's retaliated against him because of his protected activity. *See* [#25 at 19-20]. Again, the court respectfully agrees.

Although Mr. Delaney sought accommodations, there is no evidence raising an inference that Lowe's retaliated against Mr. Delaney for those accommodations. To the contrary, the record reflects actions taken by Lowe's to provide reasonable accommodations to Mr. Delaney. *See, e.g.*, Undisputed Material Facts *supra* ¶¶ 9, 11, 13-15, 18-21. Moreover, the record reveals that, despite Mr. Delaney's belief, Lowe's was not terminating his employment because of his request for

accommodations. In addition, Mr. Delaney refused to accept the temporary reassignment, and he offers no evidence to establish that the reassignment constituted an adverse employment action. *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (explaining that an adverse employment action may include demotion or reassignment to a significantly different position, but not mere inconvenience or a change in responsibilities). Thus, Mr. Delaney fails to establish a prima facie case of retaliation, thereby entitling Lowe's to summary judgment.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment [#25] is **GRANTED**;

(2) Summary Judgment shall enter in **FAVOR** of Lowe's on Claims 1 and 2 and **AGAINST** Mr. Delaney, and Mr. Delaney's claims are **DISMISSED with prejudice**;

(3) The Clerk of the Court shall enter Final Judgment in **FAVOR** of Lowe's and **AGAINST** Mr. Delaney, with each party to bear its own costs and fees;[13]

(4) The Final Pretrial Conference set for **November 18, 2020** is **VACATED**; and

(5) This matter shall be terminated accordingly.

DATED: November 17, 2020                    BY THE COURT:

                                            _____
                                            Nina Y. Wang
                                            United States Magistrate Judge

---

[13] While costs should generally "be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g., In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (citations omitted). Because the issues presented in this matter were close, and because Plaintiff is pro se, the court declines to award costs. *See Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 459 (10th Cir. 1995) (noting that there is no abuse of discretion when the district court denies fees "to a party that was only partially successful."); *Shapiro v. Rynek*, 250 F. Supp. 3d 775, 779 (D. Colo. 2017) ("[A] district court does not abuse its discretion in denying costs when . . . the non-prevailing party is indigent.").